IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 358-03






ROBERT C. HERRING, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SEVENTH COURT OF APPEALS


LUBBOCK COUNTY





 Keller, P.J., delivered the opinion for a unanimous Court. Womack, J.
filed a concurring opinion.


O P I N I O N 



 This case involves a claim of error under Tamez v. State. (1) The offense in question is failure to
register as a sex offender. (2) Appellant hoped to prevent the jury from discovering the exact sex offense that
made him subject to the registration requirement. To accomplish this end, appellant offered to stipulate that
he had previously been convicted of an offense that required him to register as a sex offender, without
specifying what that offense was. We now determine that the Court of Appeals was correct in declaring
that, if there was error, it was harmless. We shall affirm.

I. BACKGROUND


A. Trial


 Appellant was charged with failing to register as a sex offender because he failed to report in person
an intended change of address seven days prior to moving. (3) The indictment specified the prior sex offense
that subjected appellant to the registration requirements: attempted indecency with a child by contact. At
a pretrial hearing, appellant offered to stipulate that "he was convicted and placed on probation in cause
no. 960919, in the 299th District Court of Travis County, Texas, and as a result of such conviction is
required to register as a sex offender." This stipulation was offered, pursuant to Tamez, to prevent the
prosecution from mentioning to the jury the exact nature of his prior sex crime. The State responded that
it needed the judgment because it showed appellant's registration conditions (as well as his signature and
fingerprints) and appellant's defense was going to be that he did not know he had to register. In reply,
defense counsel requested that the name of the offense be redacted from the release papers. The trial court
refused to accept the stipulation and allowed appellant a running objection. 

 The prosecution referred to the attempted indecency with a child conviction at voir dire, in the
reading of the indictment, through witness testimony, and in closing arguments. The State also introduced
evidence of the conditions of community supervision for the prior offense. These conditions included
multiple references to restrictions against (1) residing in areas where minor children congregate or in
residences where they live, (2) accepting employment that would bring him into contact with children, and
(3) having contact with children without an adult present. No objection was made to the introduction of
this evidence of the conditions of probation.

 As the parties anticipated, the only contested issue at trial was whether appellant, who the evidence
showed was deaf, knew of his registration requirements. Appellant's judgment of conviction contained his
conditions of community supervision, including sex offender registration requirements. Appellant signed
a statement on the judgment form acknowledging that he understood and agreed to obey the conditions of
community supervision. 

 On November 5, 1997, David Rowan, appellant's community supervision officer in Lubbock, gave
appellant a written form containing an expanded explanation of the registration requirements, including the
requirement to notify the authorities seven days before moving. Appellant initialed this form. Rowan
interviewed appellant on October 18, 1999, with the assistance of an interpreter. Rowan discussed with
appellant all of his conditions of community supervision, which included the registration requirements. If
appellant did not understand a particular point, Rowan repeated himself or made additional explanations
until appellant indicated that he understood. Appellant gave appropriate answers to questions. 

 Appellant was scheduled to report on November 16th, but failed to show up. He did report the
next day, but because his appearance was unscheduled, no interpreter was present. Consequently, Rowan
conducted an interview by passing written notes back and forth. Appellant did not appear to have any
difficulty understanding the interview conducted in this format. 

 Appellant checked in as scheduled on December 14th, January 10th, and February 8th. On all of
these occasions an interpreter was present, and appellant appeared to understand all the matters discussed. 
On cross-examination, Rowan acknowledged that the interpreter assigned during these sessions was a
"Level I." According to a handbook prepared by the Texas Commission for the Deaf and Hard of
Hearing, "Level I" was a beginning level, indicating an interpreter who could "communicate on a one-to-one
basis and may have some success with both expressive and receptive fingerspelling." (4) This level of
interpreter "is expected to have a limited sign vocabulary and a limited knowledge of conceptual
accuracy." By contrast, a "Level IV" interpreter "exhibits excellent expressive and receptive skills in both
interpreting and transliterating. This interpreter exhibits vocabulary necessary to interpret in medical, legal,
and psychiatric settings." On redirect, Rowan further testified that appellant had properly registered with
law enforcement authorities for moves occurring in June of 1996, September of 1997, February of 1999,
and November of 2000.

 In April of 2000, Betty Parker became appellant's community supervision officer. She testified that
he reported to her on April 12th, May 11th, June 29th, July 7th, August 7th, September 1st, October 2nd, and
November 9th. An interpreter was present during the April, May, and July visits. An interpreter was not
present for the June, August, September, October, and November visits. With the possible exception of
the October visit, these latter visits were without an interpreter because appellant failed to show up at the
scheduled time. (5) When no interpreter was present, Parker would communicate with appellant in writing. 
Parker testified that appellant did not appear to have any difficulty understanding their conversation during
any of the visits. Parker conducted occasional field visits to appellant's apartment in Lubbock, including
one on October 4, 2000, when she discovered an eviction notice on his door. When appellant reported
on November 7th, Parker gave him an "Office Visit Report Form" on which to report his change of address
and any other new information. Appellant filled out the form without difficulty.

 During cross-examination, defense counsel questioned Parker regarding some responses on the
form that seemed inappropriate. Appellant listed the business he worked for as "Firus Café" (it was Furr's
Cafeteria). In response to the question, "How many hours do you work a week?" appellant wrote
"200.00" (phrased on cross-examination as two hundred dollars). He wrote his gross pay as $5.50
(phrased on cross-examination as $5.50/hr). 

 A review of the form, which was admitted into evidence, shows that appellant filled in the correct
address and phone number for Furr's Cafeteria. He left blank the question regarding his income or wages
in the previous month - a question that appeared two lines down from the one asking for the number of
hours he worked in a week. Rowan testified that it appeared that appellant, in filling in the blank for hours
worked, had simply placed an answer in the wrong spot. In addition, appellant correctly answered the
question, "Have you been arrested or questioned by Law Enforcement officials in the past 30 days?" with
"Arrested 11-4-00 for traffic warrants." He left a number of questions blank on the form, including:
"Address where you actually stay." However, he did fill in his "mailing address" as "3814 64th Dr,
Lubbock, 79413" and answered the question regarding "Other people living with you" with "Joe
Herring/Bobby Herring." This mailing address was in fact the residence of Joe Herring, appellant's
grandfather. Joe Herring testified that appellant received some mail there but had never lived there.

 Amy Lewis was in charge of the sex offender registration program at the Lubbock Police
Department. She testified that appellant first came in to see her when he moved from Terry County to
Lubbock County in April of 2000. At that time, appellant correctly communicated to her in writing his
residence address on Brownfield Highway. On November 15, 2000, appellant personally appeared at
Lewis's office and communicated in writing a change of address to 3814 64th Drive. On November 20,
appellant again contacted Lewis with a change of address, this time to 4401 Avenue Q.

 After Lewis's testimony, the State called as a witness Scott Steggs, the head of the Lubbock
Community Services for the Deaf, the agency in charge of supplying interpreters in Lubbock County. 
Steggs indicated that a Level III, or higher, interpreter was appropriate for interactions between a deaf
probationer and his community supervision officer. 

 The defense called to the witness stand Tori Gustafson, an audiologist. Gustafson testified that
American Sign Language was a language wholly separate from English, that there were different levels of
interpreters and only the higher levels could effectively translate legal concepts, and that the average deaf
person read English at a fourth to seventh grade level. On cross-examination, Gustafson testified that she
had never met or examined appellant and had no knowledge regarding his ability to communicate.

 In rebuttal, the State called Penny Spencer, the manager at the apartment complex appellant lived
in during the year 2000. Spencer testified that she conversed with appellant by passing written notes when
he sought an apartment and in several discussions about his being behind on his rent. During these latter
discussions, appellant would agree to pay his rent in installments. 

 Appellant was convicted and sentenced to two years in state jail.

B. Court of Appeals opinion


 The Court of Appeals held that the trial court did not err in permitting the State to read the portion
of the indictment referring to the prior conviction. (6) In support of this holding, the appellate court explained
that the State was required by statute to read the indictment. (7) 

 Then, "without deciding but assuming arguendo" that the trial court erred "by refusing to exclude
evidence of the exact description of appellant's prior crime during the guilt-innocence phase of trial," the
Court of Appeals determined that any such error would be nonconstitutional in nature. (8) The court
proceeded to conduct a harm analysis under Texas Rule of Appellate Procedure 44.2(b). (9) It observed
that defense counsel's trial strategy was to concede that appellant failed to report but establish that this
failure was not intentional or knowing by showing that appellant was deaf, had very poor communication
skills, did not understand all of the requirements of his community supervision, and did not understand his
reporting requirements. (10) The court further noted that the jury would have been fully aware of the exact
sex offense for which appellant had to report because that offense was read in the indictment and because
several conditions of probation involved restrictions regarding children. (11) The Court of Appeals concluded
that, even if the trial court had erred in allowing the State to offer proof of the exact description of the prior
crime, the error did not affect appellant's substantial rights, and therefore was harmless. (12) 

C. Appellant's claims on discretionary review


 We granted the following grounds for review:

(1) The Court of Appeals erred in ruling that the trial court's failure to accept appellant's
proposed stipulation, thus excluding evidence of appellant's prior conviction, was not
erroneous.


(2) The Court of Appeals erred in ruling that even if the trial court committed error by
failing to accept appellant's proposed stipulation, and exclude evidence of appellant's prior
conviction, such error was harmless.


 In his petition, with regard to his first ground, appellant conceded that the Court of Appeals's
determination that the State was required to read the indictment is consistent with the state of the law in
Texas. He contended, however, that the State should have been limited to reading the indictment and that
all additional references to the prior conviction - in voir dire, through the introduction of evidence, and in
closing argument - were improper. (13) The remainder of appellant's argument under this ground involved
a discussion of Tamez and Old Chief v. United States, (14) regarding the admissibility of the evidence under
Rule 403, (15) in light of the offer to stipulate. (16)

 With regard to the second ground, appellant's petition faulted the Court of Appeals for engaging
in a "truncated" evaluation of the record in conducting its harm analysis. Appellant contended that the
Court of Appeals failed to consider the numerous instances in which the State referred to the prior offense. 
He claimed that the State used every opportunity to mention the specific offense to the jury and that this
emphasizing of the offense was inflammatory. Although appellant recognized the Court of Appeals's finding
that the jury would have been aware of the specific prior offense by virtue of the reading of the indictment,
appellant contended that "the error occurred in the multiple references to the prior conviction, thus
improperly refocusing the jury's attention on Petitioner's prior conviction." (17)

II. ANALYSIS


 The Court of Appeals addressed the merits of the Tamez claim with respect to the indictment, and
held that the prior-conviction portion of the indictment was properly read to the jury. Appellant does not
dispute that holding. As to appellant's claim that the trial court erred in allowing other references to the
prior offense during the trial, we need not address that claim because the Court of Appeals assumed error.

 Regarding appellant's second ground for review - whether the Court of Appeals erred in
concluding that any trial court error was harmless - both appellant and the Court of Appeals correctly cite
the applicable harm standard as Rule 44.2(b). Under that standard, which applies to nonconstitutional
errors, an appellate court will not reverse a conviction if it has "fair assurance that the error did not influence
the jury, or had but a slight effect." (18) 

 Appellant's chief argument is that the State emphasized the prior offense. Even if we accept that
contention, we cannot conclude that the Court of Appeals was mistaken in finding any error harmless. 
Because the indictment referred to the prior "attempted indecency with a child" conviction, the Court of
Appeals correctly observed that the jury would have known the identity of the prior offense even if all
further references to that offense had been excluded. (19) The conditions of community supervision, containing
the admonitions against contact with children, would have served as a reminder that this offense was one
that involved a child. 

 And this evidence is not so far on the inflammatory and prejudicial side of the character-evidence
spectrum that repeating it several times before the jury would likely cause significant harm beyond the jury's
knowledge that the defendant has committed the offense. Indecency with a child and failure to register are
not similar offenses for propensity purposes: failing to register is not an instance of acting in conformity with
a propensity to molest children. Had the present offense been, for instance, sexual assault of a child, a prior
conviction for sexual assault of a child would give rise to a character conformity inference flowing from the
character trait of being a child molester. But because the primary offense is failure to register, the
conformity inference of the prior conviction is simply to show generally that appellant is a criminal. While
general criminality is a prohibited inference, it is not as strong or inflammatory an inference as the conformity
inference that arises from substantially similar offenses as it did in Tamez, where the State sought a felony
DWI conviction and the prior convictions were DWI's, (20) and in Old Chief, where the Government sought
a conviction for possession of a firearm by a felon and the prior crime was a gun crime. (21) Moreover, the
particular prior offense in this case is far from being the worst offense a sex offender might have on his
record. The evidence that the prior offense was attempted indecency with a child prevented the jury from
speculating that the offense was worse than it was.

 Moreover, there is substantial evidence supporting the conviction. The evidence shows that
appellant did not in fact give his home address as was required, that this failure occurred on more than one
occasion (November 7 and November 15), that he had ample notice of the requirement, and that he had
reported changes of address before. No evidence was offered of appellant's actual understanding of the
requirements for sex offender registration. Nor did the defense offer evidence of appellant's actual
communicative ability other than to point to two incorrectly filled out questions on one report form. The
defense pointed to no other such mistakes, much less to a pattern of mistakes that might show an inability
to understand or communicate effectively. The defense did offer evidence that the Lubbock community
supervision office used interpreters with an inadequate level of training but gave no reason to believe the
interpreter at the plea hearing in Travis County was inadequate or that appellant did not clearly understand
the registration conditions at that time. And regardless of the capabilities of the interpreters that provided
their services at various times, the jury had reason to believe that appellant understood the address
requirement when it was given to him - at least twice - in writing. While the defense introduced expert
testimony that the average deaf person could read and write at a fourth to seventh grade level, the defense
introduced no testimony as to appellant's reading and writing abilities. By contrast, the State introduced
evidence from community supervision officers and a former landlord that appellant could communicate well
by passing written notes.

 In summary, the State's repetition of the name of the offense at various stages of the trial was not
harmful because: 1) the jury would have known of, and been reminded of, the nature of the offense even
if the trial court had accepted the stipulation and prevented mention of the name of the offense at any stage
of the trial except the indictment, 2) the character conformity inference of the prior conviction was not
particularly strong, 3) the conviction itself was for one of the less serious offenses subject to the registration
statute, and 4) the evidence supporting the conviction was substantial. We have fair assurance that the
error, if any, did not influence the jury, or had but slight effect.

 We affirm the judgment of the Court of Appeals.

 KELLER, Presiding Judge

Date delivered: October 6, 2004

Publish
1. 11 S.W.3d 198 (Tex. Crim. App. 2000).
2. See TEX. CODE CRIM. PROC., Art. 62.10.
3. Art. 62.02(a).
4. Texas Commission for the Deaf and Hard of Hearing, Board for Evaluation of Interpreters, A
Handbook for Interpreter Licensing Candidates, November 1998. Rowan testified that he knew
that the Commission existed but knew nothing about it. Nevertheless, the handbook was admitted into
evidence, and defense counsel had Rowan read portions to the jury.
5. Parker's notes failed to document the reason for the absence of an interpreter for the
October visit.
6. Herring v. State, 2003 Tex. App. LEXIS 3642, *6 (Amarillo, delivered April 24, 2003).
7. Id. at *5-*6.
8. Id. at *6.
9. Id. at *6-*7. See Tex. R. App. P. 44.2(b): "Any error, defect, irregularity, or variance that
does not affect substantial rights must be disregarded."
10. Id. at *7.
11. Id. at *8.
12. Id.
13. Emphasis added.
14. 519 U.S. 172 (1997).
15. Tex. R. Evid. 403, which provides: "Although relevant, evidence may be excluded if its
probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless presentation of cumulative
evidence."
16. When questioned at oral argument, defense counsel conceded that the State was required
by statute to read the indictment. 

17. Emphasis added.
18. Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).
19. The jury would, of course, have been informed of the stipulation. Hollen v. State, 117
S.W.3d 798, 802 (Tex. Crim. App. 2003).
20. See Tamez, generally.
21. Old Chief v. United States, 519 U.S. 172, 185 (1997)("Where a prior conviction was for
a gun crime or one similar to other charges in a pending case the risk of unfair prejudice would be
especially obvious").