Affirmed and Memorandum Opinion filed August 1, 2006








Affirmed and Memorandum Opinion filed August 1, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00384-CR

____________

 

WILLIAM E. ALEXANDER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 182nd
District Court

Harris County, Texas

Trial Court Cause No. 1012929

 



 

M E M O R A N D U M   O P I N I O N

Appellant, William E. Alexander, appeals his conviction for
sexual assault of a child and ten-year sentence in the Texas Department of
Criminal Justice, Institutional Division.  On appeal, appellant complains the
trial court erred (1) in admitting evidence when no chain of custody had been
established, (2) in denying his motion to suppress, and (3) in admitting outcry
testimony.  We affirm. 








                                                  Background

Appellant is the father of the complainant, B.J., who was
14 years old at the time of the offense.  B.J.=s mother, Ronda
Banks, and appellant were never married and they never lived in the same
house.  B.J. lives with his mother and stepfather.  On March 13, 2004, Banks
took B.J. to stay with appellant over spring break.  Appellant lived with his
grandmother, Letha Franklin.  Franklin=s stepson, AJitterbug,@ also lived in the
same house.

Franklin=s house has three bedrooms.  On the night
of March 13, Franklin and Jitterbug were in their respective bedrooms.  B.J.
was in the third bedroom watching TV when appellant came into the room.  B.J.
testified that he knew what appellant wanted when he came into the bedroom.[1] 
When appellant asked B.J. if he could lay in the bed, B.J. said, ASure.  It=s yours,@ and slid over. 
Appellant started touching B.J., grabbed his hand, and put it on his penis. 
B.J. then proceeded to give appellant oral sex.  Before ejaculating, appellant
told B.J. to stop.  Appellant grabbed a sheet, got up from the bed, went over
to the chair, and ejaculated.  After that, appellant proceeded to perform oral sex
on B.J.  B.J. told appellant to stop and said he needed to make a phone call. 
Appellant told B.J. to hurry back and waited in the bedroom.  








B.J. went to the living room and called his best friend,
Christian Silver, and told her what happened.  Silver persuaded him to call his
mother, which he did right after that.  B.J. asked Banks to pick him up A[b]ecause I just
had sex with Daddy.@  He did not want to return to the bedroom
and called Silver again because he did not want Ato just be sitting
there not on the phone.@  While he was on the phone, B.J. saw
flashing lights and heard a knock on the door.  B.J. answered the door, with
appellant right behind him.  Officer Jorge Pena, who was responding to a call
for sexual assault of a child, was at the door.  When Pena asked B.J. if anyone
had called the police, appellant said ANobody called the
police.@[2]  Pena noticed
that B.J. was holding a bowl.  When an ambulance pulled up, B.J. ran past Pena
toward it.  Pena followed B.J. to the ambulance.  When Pena asked B.J. if
everything were okay, B.J. said appellant had sexually assaulted him.  Pena
testified that B.J. told him he had performed oral sex on appellant and spit in
a bowl to collect evidence.[3] 


About this time, B.J.=s mother and
stepfather arrived at the scene.  Banks followed appellant into the house. 
Pena found Banks and appellant arguing.  Pena pulled Banks away from appellant
and told her she was interfering with a police investigation.  Pena then
handcuffed appellant, escorted him out of the house, put him the patrol car,
and called for backup.  Pena returned to the house and went into the bedroom
that B.J. had pointed out as the location where the sexual assault had
occurred.  Pena collected the bed sheets.  Pena also used gauze to collect
evidence from the bowl into which B.J. had spit.  

DNA from sperm found on the bed sheet matched appellant=s DNA.[4] 
DNA from sperm found on B.J.=s boxer shorts matched B.J.=s DNA.  Tests on
the gauze revealed no sperm or semen.  

                                              Chain of Custody








In his first point of error, appellant claims the trial
court erred by admitting a bed sheet containing his sperm cell DNA into
evidence when no chain of custody had been established and no identification
had been made.  Appellant complains the error is not harmless because the
presence of his DNA to some small extent tends to corroborate B.J.=s testimony that
appellant ejaculated into the sheet.  

The Texas Rules of Evidence do not specifically address the
issue of chain of custody.  Simmons v. State, 944 S.W.2d 11, 12 (Tex.
App.CTyler 1996, pet.
ref=d).  However, Rule
901 provides A[t]he requirement of authentication or identification
as a condition precedent to admissibility is satisfied by evidence sufficient
to support a finding that the matter in question is what its proponent claims.@  Tex. R. Evid. 901  This can be
accomplished through the testimony of a witness with knowledge that an item is
what it is claimed to be.  Davis v. State, 992 S.W.2d 8, 11 (Tex. App.CHouston [1st
Dist.] 1996, no pet.).  

Appellant argues the white sheet is an item like millions
of others, with absolutely no special identifiable characteristics.  Appellant
points out that Officer Pena gave no indication there were any stains, marks,
tears, or other characteristics to distinguish the sheet from others exactly
like it.  Pena did not mark the sheet or the paper bag Franklin gave him for
identification purposes.  

A>[I]f the offered
evidence is of such a nature as not to be readily identifiable, or to be
susceptible to alteration by tampering or contamination, sound exercise of the
trial court=s discretion may require a substantially more
elaborate foundation.=@  Hammett v.
State, 578 S.W.2d 699, 708 (Tex. Crim. App. 1979) (quoting McCormick=s Handbook on the Law of Evidence, 527 (2d ed., E.
Cleary ed. 1972)).  However, when there is no evidence of tampering, an
objection that the State failed to establish a proper chain of custody goes to
the weight of the evidence, rather than admissibility.  Lagrone v. State,
942 S.W.2d 602, 617 (Tex. Crim. App. 1997); Bird v. State, 692 S.W.2d
65, 70 (Tex. Crim. App. 1985); Parr v. State, 606 S.W.2d 928, 930 (Tex.
Crim. App. 1980).  Although appellant objected to the admission of the sheets
into evidence on the ground Athat the chain of custody has not been
properly proven in this case,@ we find nothing in the record showing
that he raised the issue of tampering.  Because appellant=s objection did
not challenge the admissibility of the evidence, his first point of error is
overruled.  








                                            Motion to Suppress

In his second point of error, appellant claims the trial
court violated his federal constitutional rights when it denied his motion to
suppress evidence that was seized without a warrant because there were no
exigent circumstances.[5] 
We review the trial court=s ruling on a motion to suppress for an
abuse of discretion.  Dyar v. State, 125 S.W.3d 460, 462 (Tex. Crim.
App. 2003).  At the hearing on a motion to suppress, the trial court is the
sole judge of the weight and credibility of the evidence.  Wood v. State,
18 S.W.3d 642, 646 (Tex. Crim. App. 2000).  When there are no explicit findings
of historical fact, we review the evidence in the light most favorable to the
trial court=s ruling and assume that the trial court made implicit
findings of fact supported in the record.  Swain v. State, 181 S.W.3d
359, 365 (Tex. Crim. App. 2005); Estrada v. State, 154 S.W.3d 604, 607
(Tex. Crim. App. 2005).  We will sustain the trial court=s ruling if it is
correct on any theory of law applicable to the case.  Swain, 181 S.W.3d
at 365.  

Warrantless searches and seizures inside a home are
presumptively unreasonable.  Olivarez v. State, 171 S.W.3d 283, 288
(Tex. App.CHouston [14th Dist.] 2005, no pet.).  To support a
warrantless search, probable cause, in combination with some sort of exigent
circumstances, must exist.  Estrada, 154 S.W.3d at 609.  Exigent
circumstances include (1) rendering aid or assistance to persons whom the
officers reasonably believe are in need of assistance; (2) preventing
destruction of evidence or contraband; and (3) protecting the officers from
persons whom they reasonably believe to be present and armed and dangerous.  Id.
at 608 n.12.  








With regard to the possible destruction of evidence, the
State must show the police could have reasonably concluded that the evidence
would be destroyed or removed before they could obtain a search warrant.  McNairy
v. State, 835 S.W.2d 101, 107 (Tex. Crim. App. 1991).  Factors relevant to
this determination include (1) the degree of urgency involved and the amount of
time necessary to obtain a warrant; (2) reasonable belief that the evidence is
about to be removed; (3) the possibility of danger to police officers guarding
the site of the evidence while a search warrant is sought; (4) information
indicating the possessors of the evidence are aware that the police are on
their trail; and (5) the ready destructibility of the evidence.  Id.
(quoting United States v. Rubin, 474 F.2d 262, 268 (3d Cir. 1973)).  

The trial court conducted a hearing on appellant=s motion to
suppress.  At the hearing, Pena testified that before he attempted to recover
any evidence, he requested a crime scene unit that specializes in collecting
evidence, but was informed that the crime scene units were engaged elsewhere. 
Pena received instructions from the investigator regarding how to proceed
regarding the recovery of evidence, but never attempted to obtain a search
warrant for the recovery of evidence in the house.  

When Pena entered the house, he saw an older couple (Letha
Franklin and her stepson, Jitterbug) he believed were the owners of the house. 
However, he did not inquire into who owned the house.  Pena told them he needed
to collect some evidence.  According to Pena, Franklin and Jitterbug did not
act like they knew what was going on.  B.J. had pointed out to Pena in which
bedroom the sexual assault had occurred.  Pena looked around the bedroom
because B.J. had told him that after the sexual assault, appellant had Apossibly gone
somewhere else to ejaculate.@  Pena collected the sheets on the bed and
Abasically asked if
[he] could take the sheets and [Franklin] said it was okay as long as [he got]
them back to her.@  

Because appellant was in custody, and the older couple in
the house, by Pena=s admission, had no idea what was going
on, he contends there is nothing to suggest that anyone had any knowledge about
the offense or that Pena was going to seize the sheets before he entered the
house and announced his intent to remove them.  Appellant also argues sheets
are not easily destroyed or disposed of like narcotics that might easily be
flushed down a toilet. 








Contrary to appellant=s arguments, we
find exigent circumstances were present.  Pena explained that because he was
concerned about preserving evidence in a sexual assault case, he needed to
collect the evidence as quickly as he could.  Pena also observed that there
were two individuals present in the house who lived with appellant and knew the
police were conducting an investigation.  Evidence of semen could be lost if
the sheets were removed or cleaned.  Under these circumstance, Pena could have
reasonably concluded that the bed sheets would not remain unaltered or unmoved
while he acquired a search warrant.  Appellant=s second point of
error is overruled.  

In his third point of error, appellant complains the trial
court violated his rights under Article I, ' 9 of the Texas
Constitution when it denied his motion to suppress.  ATo brief a state
constitutional issue adequately, appellant must present specific arguments and
authorities supporting his contention under the Texas Constitution.@  Bell v. State,
90 S.W.3d 301, 305 (Tex. Crim. App. 2002).  Because appellant has failed to do
this, his third point of error is overruled.  

                                             Hearsay Testimony

In his fourth point of error, appellant claims it was error
for the trial court to admit outcry testimony over his objection without
holding a hearing pursuant to the Aoutcry@ statute.  See
Tex. Code Crim. Proc. Ann. art.
38.072 (Vernon 2005) (providing for the admission of hearsay testimony in the
prosecution of certain offenses committed against children twelve years or
younger).  The outcry statute creates an exception to the hearsay rule for
statements made by a child who is a victim of sexual abuse.  Id.  Outcry
testimony from the first adult to whom the child made statements describing the
alleged offense will not be inadmissible because of the hearsay rule if certain
requisites are met.  Chapman v. State, 150 S.W.3d 809, 812 (Tex. App.CHouston [14th
Dist.] 2004, pet. ref=d).  Appellant complains of Pena=s testimony
regarding B.J.=s statements to him because Pena was not the first
adult to whom B.J. disclosed the alleged offense.








The outcry statute, however, is not applicable to this case
because B.J. was fourteen when the charged offense occurred.  See Marquez v.
State, 165 S.W.3d 741, 746 (Tex. App.CSan Antonio 2005,
pet. ref=d) (holding outcry
statute applies to children who have yet to reach their thirteenth birthday); Chapman,
150 S.W.3d at 812 (explaining outcry statute creates an exception to the
hearsay rule in the prosecution of sexual offenses committed against a child
twelve years or younger).  

Appellant also asserts B.J.=s statement to
Pena about the sexual assault does not meet the requirements of the excited
utterance exception to the rule against hearsay.  Appellant argues it was not
an excited utterance because B.J. had willingly engaged in sexual contact with
appellant, had spoken to his mother and a friend before he spoke with Pena, and
had secured a bowl of saliva because he thought it might contain DNA. 
Appellant argues this behavior seems more calculating than distressed, and can
hardly be considered spontaneous. 

Pena testified, without objection, that he followed B.J. to
the ambulance where B.J. told him that appellant had sexually assaulted him,
that he performed oral sex on appellant, and that he spit into a bowl to
collect evidence.  When the prosecutor asked Pena how he found out in which
bedroom the assault had occurred, Pena testified that B.J. identified the
bedroom where the sexual assault occurred.  Appellant objected on the basis of
hearsay, and the trial court sustained his objection.  Appellant, however, did
not ask for an instruction to disregard.  The State then questioned Pena about
B.J.=s emotional state
at the time.  Pena testified that B.J. was in an emotional state, i.e, that he
was disturbed and distraught.  Again, the prosecutor asked Pena about the
location of the bedroom and appellant objected on the basis of hearsay.  The
trial court overruled appellant=s objection.  Pena, again, testified that
B.J. pointed out the bedroom where the assault occurred.  When Pena then
testified that B.J. told him that he was forced to perform oral sex on
appellant, appellant objected on the basis of hearsay and requested a running
objection for hearsay.  The trial court overruled the objection and granted
appellant a running objection.








With regard to Pena=s testimony that
B.J. told him that appellant had sexually assaulted him, that he performed oral
sex on appellant, and that he spit into a bowl to collect evidence, appellant
failed to object and, therefore, has not preserved error on appeal.  See
Haley v. State, 173 S.W.3d 510, 516 (Tex. Crim. App. 2005) (stating that to
preserve error, the record must show (1) appellant made a timely and specific
request, objection or motion; and (2) the trial court either ruled on the
request, objection or motion, or it refused to rule and the complaining party
objected to that refusal).  With respect to Pena=s testimony that
B.J. pointed out in which bedroom the assault occurred, we conclude appellant
waived any error by failing to pursue his objection to an adverse ruling when
he did not request an instruction to disregard after the trial court had
sustained his objection.  See Caron v. State, 162 S.W.3d 614, 617 (Tex.
App.CHouston [14th
Dist.] 2005, no pet.) (explaining that failure to pursue objection to an
adverse ruling after an objection has been sustained preserves nothing for
review because defendant receive all relief requested).[6] 









With regard to the remainder of Pena=s testimony
regarding what B.J. told him during the conversation they had in the ambulance,
we find that such statements were an excited utterance.  An excited utterance
is A[a] statement
relating to a startling event or condition made while the declarant was under
the stress of excitement caused by the event or condition.@  Tex. R. Evid. 803(2).  When ascertaining
if a statement is an excited utterance under Rule 803(2) of the Rules of
Evidence, the crux of the inquiry is A>whether the declarant
was still dominated by the emotions, excitement, fear, or pain of the event.=@  King v. State,
953 S.W.2d 266, 269 (Tex. Crim. App. 1997) (quoting McFarland v. State,
845 S.W.2d 824, 846 (Tex. Crim. App. 1992), overruled on other grounds by
Bingham v. State, 915 S.W.2d 9 (Tex. Crim. App. 1994)).  The excited
utterance exception is based on the assumption that the declarant is not, at
the time of the statement, capable of the kind of reflection that would enable
him to fabricate information.  Apolinar v. State, 155 S.W.3d 184, 186
(Tex. Crim. App. 2005).  We review a trial court=s ruling on the
admission of a statement under the excited utterance exception to the hearsay
rule for an abuse of discretion.  Wall v. State, 184 S.W.3d 730, 743
(Tex. Crim. App. 2006).  

Pena testified that B.J. appeared to be disturbed and
distraught at the time he told B.J. that appellant had sexually assaulted him. 
During subsequent examination, when the prosecutor again asked Pena about B.J.=s emotional state
at the time of the statement, Pena stated B.J. was very upset and traumatized. 
Pena also testified that when the ambulance pulled up, B.J. ran past him toward
it, indicating that B.J. was upset.  We do not find the trial court abused its
discretion in allowing B.J.=s statements through Pena=s testimony.  

Even if the trial court committed error, we conclude that
such error is harmless.  Under Rule 44.2(b) of the Texas Rules of Appellate
Procedure, any nonconstitutional error that does not affect appellant=s substantial
rights must be disregarded.  Tex. R. App.
P. 44.2(b).  The erroneous admission of evidence does not affect substantial
rights if the reviewing court, A>after examining
the record as a whole, has fair assurance that the error did not influence the
jury, or had but a slight effect.=@  Guevara v.
State, 152 S.W.3d 45, 53 (Tex. Crim. App. 2004) (quoting Solomon v.
State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)).  

In assessing the likelihood that the error adversely
affected the jury=s decision, the reviewing court should
consider everything in the record, including any testimony or physical evidence
admitted for the jury=s consideration, the nature of the
evidence supporting the verdict, the character of the alleged error and how it
might be considered in connection with other evidence in the case.  Haley,
173 S.W.3d at 518.  We may also consider the jury instructions, the State=s theory and any
defensive theories, closing arguments, voir dire, and whether the State
emphasized the error.  Id. at 518B19.  An appellate
court will not reverse a conviction if it has A>fair assurance
that the error did not influence the jury, or had but a slight effect.=@  Herring v.
State, 147 S.W.3d 390, 396 (Tex. Crim. App. 2004) (quoting Johnson v.
State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).  








Here, the same evidence came in through B.J.=s testimony
without objection.  B.J. described the sexual assault in detail, i.e., that
appellant started touching him and put his hand on appellant=s penis; that B.J.
gave appellant oral sex, but stopped before appellant ejaculated; that
appellant ejaculated in another part of the room; and that appellant performed
oral sex on B.J.  AIt is well established that questions
regarding the admission of evidence are rendered moot if the same evidence is
elsewhere introduced without objection; any error in admitting evidence over a
proper objection is harmless if the same evidence is subsequently admitted
without objection.@  Chamberlain v. State, 998 S.W.2d
230, 235 (Tex. Crim. App. 1999).  Therefore, we find the error, if any, did not
influence the jury, or had but a slight effect.  Appellant=s fourth point of
error is overruled.  

Accordingly, the judgment of the trial court is affirmed.  

 

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed August 1, 2006.

Panel consists of
Justices Hudson, Fowler, and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).

 









[1]  B.J. testified that appellant started touching him
before he was ten years old and it progressed to performing oral sex.  B.J.
estimated that he had performed oral sex on appellant between 10 and 20 times
prior to this occasion.





[2]  B.J. had not asked his mother to call the police and
he did not know the police had been called.  It was later determined that B.J.=s stepfather had called the police. 





[3]  B.J. testified he feared no one would believe him. 
He thought appellant=s DNA might be in his spit because appellant=s penis had been in his mouth, even though appellant
did not ejaculate until he got up and left the bed.





[4]  It was not possible to determine when the sperm was
actually deposited on the sheet.  





[5]  Appellant also argues Pena did not have consent to
conduct a warrantless search.  Because we conclude exigent circumstances were
present, we need not address whether Pena had obtained consent.  





[6]  The proper method by which to pursue an objection to
an adverse ruling and preserve error is to (1) object, (2) request an
instruction to disregard, and (3) move for a mistrial.  Caron, 162
S.W.3d at 618 n.3.