ACCEPTED
02-16-00199-CR
SECOND COURT OF APPEALS
FORT WORTH, TEXAS
11/14/2016 2:59:03 PM
DEBRA SPISAK
CLERK

IN THE COURT OF APPEALS FOR THE
SECOND COURT OF APPEALS DISTRICT OF TEXAS

FILED IN
2nd COURT OF APPEALS
FORT WORTH, TEXAS

11/14/2016 2:59:03 PM

DEBRA SPISAK
Clerk

| | | |
|---|---|---|
| **JIM HARVEY OPRY,** | § | |
| *APPELLANT* | § | |
| | § | |
| | § | |
| **V.** | § | **02-16-00199-CR** |
| | § | |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| *APPELLEE* | § | |

*APPEALED FROM CAUSE NUMBER 1399102D IN THE CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY, TEXAS; THE HONORABLE ROBB CATALANO, PRESIDING.*

§ § §
**STATE'S BRIEF**
§ § §

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR, Assistant
Criminal District Attorney
Chief, Post-Conviction

LANDON A. WADE
Assistant Criminal District Attorney
Tim Curry Criminal Justice Center
401 W. Belknap
Fort Worth, Texas 76196-0201
(817) 884-1687; FAX (817) 884-1672
State Bar No. 24098560
COAAppellateAlerts@tarrantcounty.com

Oral Argument is requested, but only if Appellant is also requesting argument.

DAVID ALEX and
ALLENNA BANGS, Assistant
Criminal District Attorneys

# TABLE OF CONTENTS

PAGE

INDEX OF AUTHORITIES.................................................................................... iii

THE CASE IN BRIEF ...........................................................................................1

STATEMENT OF FACTS .....................................................................................2

SUMMARY OF STATE'S RESPONSES ..............................................................5

STATE'S REPLY TO APPELLANT'S FIRST POINT OF ERROR.......................6

Appellant's Contention ..........................................................................................6

State's Reply .........................................................................................................6

Argument and Authorities......................................................................................6

    I.     The trial court did not err in admitting evidence of Appellant's extraneous bad acts because the evidence Appellant claims should not have been admitted was not introduced during the State's case-in-chief. ........................................................................................6

          A.     Standard of Review and Applicable Law ...................................7

          B.     The evidence of extraneous acts Appellant claims should not have been admitted were not introduced in the State's case-in-chief.........................................................................................8

          C.     Assuming without conceding there was error, any such error was harmless. ...........................................................................10

STATE'S REPLY TO APPELLANT'S SECOND POINT OF ERROR ...............12

Appellant's Contention ........................................................................................12

State's Reply ..................................................................................................12

Argument and Authorities.............................................................................12

      I.      The trial court did not err in overruling Appellant's motion for new trial because conflicting evidence was presented during the hearing on Appellant's motion. ........................................................................12

            A.      Standard of Review and Applicable Law .................................13

            B.      Conflicting evidence was presented during the hearing on Appellant's motion; therefore, the trial court did not err..........14

CONCLUSION AND PRAYER ...........................................................................17

CERTIFICATE OF COMPLIANCE......................................................................17

CERTIFICATE OF SERVICE .............................................................................18

## INDEX OF AUTHORITIES

**CASES**                                                                                                **PAGES**

*Avila v. State*,
18 S.W.3d 736 (Tex. App.—San Antonio 2000, no pet.) ................................10

*Blackwelder v. State*,
No. 2-05-042-CR, 2006 WL 3525383
(Tex. App.—Fort Worth Dec. 7, 2006, pet. ref'd) ...........................................8, 9

*Hernandez v. State*,
176 S.W.3d 821 (Tex. Crim. App. 2005) ...........................................................8

*Herring v. State*,
147 S.W.3d 390 (Tex. Crim. App. 2004) .....................................................10, 11

*Jaubert v. State*,
74 S.W.3d 1 (Tex. Crim. App. 2002) ............................................................8, 9

*Lewis v. State*,
911 S.W.2d 1 (Tex. Crim. App. 1995) ...................................................13, 15, 16

*Magee v. State*,
994 S.W.2d 878 (Tex. App.—Waco 1999, pet. ref'd) ......................................10

*Martin v. State*,
176 S.W.3d 887 (Tex. App.—Fort Worth 2005, no pet.)..................................10

*Patrick v. State*,
906 S.W.2d 481 (Tex. Crim. App. 1995), *cert. denied*,
517 U.S. 1106 (1996)................................................................................14, 16

*Quinn v. State*,
958 S.W.2d 395 (Tex. Crim. App. 1997) ..........................................................13

*Rich v. State*,
160 S.W.3d 575 (Tex. Crim. App. 2005) ..........................................................10

*Russell v. State*,
155 S.W.3d 176 (Tex. Crim. App. 2005) ..........................................................10

*Salazar v. State*,
    38 S.W.3d 141 (Tex. Crim. App. 2001) ................................................13

*Sanders v. State*,
    422 S.W.3d 809 (Tex. App.—Fort Worth 2014, pet. ref'd)................................7

*Sandone v. State*,
    394 S.W.3d 788 (Tex. App.—Fort Worth 2013, no pet.)....................................7

## **Rules, Codes and Statutes**

TEX. CODE CRIM PROC. art. 36.22 ................................................................13

TEX. CODE CRIM. PROC. art 37.07 § 3, § 3(a)(1), § 3(g) ...................................7, 8, 9

TEX. R. APP. P. 44.2(b)...........................................................................10

TEX. R. EVID. 404(b) ...........................................................................8, 9

# IN THE COURT OF APPEALS FOR THE
## SECOND COURT OF APPEALS DISTRICT OF TEXAS

| | | | |
|---|---|---|---|
| **JIM HARVEY OPRY,** | § | | |
| *APPELLANT* | § | | |
| **V.** | § | NO. | **02-16-00199-CR** |
| | § | | |
| **THE STATE OF TEXAS,** | § | | |
| *APPELLEE* | § | | |

*APPEALED FROM CAUSE NUMBER 1399102D IN THE CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY, TEXAS; THE HONORABLE ROBB CATALANO, PRESIDING.*

TO THE HONORABLE COURT OF APPEALS:

## THE CASE IN BRIEF

THE CHARGE ........................................... MURDER AND MANSLAUGHTER;
(CR 1: 6-7)

THE PLEA .......................................................... GUILTY TO MANSLAUGHTER
(RR 2: 5)

THE VERDICT (Jury) ............................................................................. GUILTY
(CR 1: 81)

THE PUNISHMENT (Jury) ...................................................... 85 YEARS IDTDCJ
(CR 1: 81)

1

## STATEMENT OF FACTS

On January 1, 2015, Brittany Eylar ("Eylar"), the victim in this case, called and texted her friend Brandon Peterson ("Peterson") and asked him for a ride. RR 5: 166-167. Peterson agreed and arrived at the location provided by Eylar. RR 5: 168. Based on Peterson's conversation with Eylar, Peterson believed Eylar wanted to leave before someone returned to her location. RR 5: 170, When Peterson arrived, however, he realized someone was already there. *Id.* Peterson heard arguing, and saw Eylar come out to meet him. RR 5: 171. Eylar told Peterson to "hold on", briefly exited Peterson's vehicle, and then returned to his vehicle with her bags. RR 5: 171, 175.

As Peterson helped Eylar load her bags into his car, Peterson heard Eylar and another person yelling at each other. RR 5: 174. Peterson identified the other person as Jim Opry ("Appellant"). RR 5: 175. The yelling between Eylar and Appellant continued to escalate as Peterson helped Eylar. RR 5: 176. After Peterson helped Eylar load two bags into his car, he turned around and saw Eylar lying on the ground. RR 5: 177. Peterson knew immediately that Eylar had been badly injured. RR 5: 180. Unbeknownst to Peterson, Appellant had struck Eylar's head from behind with a caulk gun. RR 6: 143-144. Peterson told Appellant that

2

they needed to call 911, but Appellant told Peterson not to call the police. RR 5: 180-181. Peterson then left the scene and called 911 anonymously. RR 5: 189.

When the responding officers arrived at the scene, they believed Eylar had been shot in the head due to the appearance of her injury. RR 5: 70. Eylar was found lying on a staircase, unresponsive, with blood leaking from hear head wound. RR 4: 140. Eylar was then transported by ambulance to John Peter Smith Hospital ("JPS") for treatment. RR 4: 141. Eylar died eight days later. RR 5: 91. The cause of death as determined by the Tarrant County Medical Examiner's Office was penetrating blunt trauma of the head. RR 6: 12. Law enforcement eventually located and arrested Appellant in Parker County on January 12, 2015. RR 5: 260, 269.

Appellant was subsequently charged with the murder of Brittany Eylar. CR 1: 6. In count two of the indictment, Appellant was charged with manslaughter. *Id.* Appellant pled guilty to manslaughter, waived his right to a jury on the guilt/innocence portion of the trial, and elected to have a jury assess his punishment. CR 1: 4-5. The punishment evidence presented by the State included but was not limited to evidence showing that: (1) Appellant committed the crime to which he pled guilty—the manslaughter of Brittany Eylar; (2) Appellant killed a 14-year old girl when he was a juvenile and subsequently hid her body; (3)

3

Appellant was a member of the Aryan Circle, a violent white-supremacist gang; (4) Appellant had previously committed aggravated assault with a deadly weapon against his ex-girlfriend; and (5) Appellant had additional prior convictions for prohibited weapons, unlawful possession of a firearm by a felon, and evading arrest/detention by vehicle. RR 4: 46-74, 80-133; RR 5: 237-238; RR 8: 263. At the conclusion of the punishment phase of trial, the jury assessed Appellant's punishment at 85 years' confinement. CR 1: 81.

## SUMMARY OF STATE'S RESPONSES

### State's Reply to Appellant's First Point of Error

The trial court did not err in admitting extraneous bad acts because the extraneous acts Appellant claims were erroneously admitted were not introduced during the State's case-in-chief. Alternatively, assuming without conceding there was error, any such error was harmless.

### State's Reply to Appellant's Second Point of Error

The trial court did not err in overruling Appellant's motion for new trial because conflicting evidence was presented during the hearing on Appellant's motion.

## STATE'S REPLY TO APPELLANT'S FIRST POINT OF ERROR

Appellant's Contention

The trial court erred in admitting evidence of extraneous bad acts without giving proper notice to Appellant in violation of Rule 404(b) of the Texas Rules of Evidence and in violation of due process.

State's Reply

The trial court did not err in admitting evidence of Appellant's extraneous bad acts because the evidence Appellant claims should not have been admitted was not introduced during the State's case-in-chief. Alternatively, assuming without conceding there was error, any such error was harmless.

Argument and Authorities

**I.    The trial court did not err in admitting evidence of Appellant's extraneous bad acts because the evidence Appellant claims should not have been admitted was not introduced during the State's case-in-chief.**

In his first point of error, Appellant argues that the trial court erred in admitting evidence of certain extraneous bad acts alleged to have been committed by Appellant because the State did not provide Appellant notice of its intent to use them at trial. *See* Appellant's Brief at 7. Specifically, Appellant complains of testimony elicited during Appellant's cross examination regarding: (1) Appellant's killing of his neighbor's family pet with a compound bow; and (2) Appellant's

6

attempts to set a girl's hair on fire when he rode the school bus as a child. *See* Appellant's Brief at 11-12.

## A. Standard of Review and Applicable Law

A trial court's admission of evidence over a defendant's objection is reviewed under an abuse of discretion standard. *Sanders v. State*, 422 S.W.3d 809, 812 (Tex. App.—Fort Worth 2014, pet. ref'd); *Sandone v. State*, 394 S.W.3d 788, 791 (Tex. App.—Fort Worth 2013, no pet.). An abuse of discretion occurs when a trial court's decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Sanders*, 422 S.W.3d at 812–13; *Sandone*, 394 S.W.3d at 791.

Article 37.07, section 3 of the Texas Code of Criminal Procedure governs the admissibility of evidence presented by the State during the punishment phase of a criminal trial. *See* TEX. CODE CRIM. PROC. art 37.07 § 3(a)(1). Regarding the introduction of extraneous crimes or bad acts during punishment, Article 37.07, section 3(g) provides that: "[o]n timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence." *Id.* § 3(g). Rule 404(b) provides in pertinent part as follows:

> Evidence of a crime, wrong, or other act is not admissible
> to prove a person's character in order to show that on a
> particular occasion the person acted in accordance with
> the character . . . . On timely request by a defendant in a

7

> criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence—other than that arising in the same transaction—in its *case-in-chief*.

TEX. R. EVID. 404(b) (emphasis added). Therefore, both article 37.07, section 3(g) and rule 404(b) condition the admissibility of extraneous offense evidence on the State's compliance with rule 404(b)'s notice provision. *Id.*; *Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005). This notice provision, however, applies only to evidence introduced in the State's case-in-chief. *Jaubert v. State*, 74 S.W.3d 1, 3 (Tex. Crim. App. 2002). When the State introduces extraneous offense evidence in rebuttal or during cross examination, the defendant is not entitled to notice of the State's intent to present evidence of those extraneous offenses. *Id.* at 4; *Blackwelder v. State*, No. 2-05-042-CR, 2006 WL 3525383, at *2 (Tex. App.—Fort Worth Dec. 7, 2006, pet. ref'd) (mem. op., not designated for publication).

**B.      The evidence of extraneous acts Appellant claims should not have been admitted were not introduced in the State's case-in-chief.**

Appellant complains that he was not provided notice of the State's intent to introduce evidence related to two separate extraneous acts—Appellant's killing of his neighbor's family pet and Appellant's attempts to light a girl's hair on fire. *See* Appellant's Brief at 10-11.

8

During the State's cross examination of Appellant, the prosecutor asked Appellant if he recalled stealing his neighbors' compound bow and killing their family pet when Appellant was growing up. RR 6: 227. The prosecutor then asked Appellant if he remembered trying to light a girl's hair on fire when Appellant rode the school bus as a child. RR 6: 228. Appellant's trial counsel then objected on grounds that the State did not provide extraneous notices related to those inquiries. *Id.* The trial court overruled Appellant's objection. *Id.*

The State filed its State's Notice of Intent to Introduce Evidence Pursuant to Articles 37.07 and Articles 609(F) and 404(B) T.R.C.E. on March 24, 2016. CR 1: 32. That document did not give notice of the State's intention to introduce evidence related to the extraneous acts Appellant claims should not have been admitted. CR 1: 32-33. Evidence of those particular extraneous acts, however, was presented during the State's cross examination of Appellant—not the State's case-in-chief. RR 6: 153, 227-228. Thus, because the evidence related to those extraneous acts was not presented during the State's case-in-chief, Appellant was not entitled to notice under 37.07, section 3(g) with respect to those particular extraneous acts. TEX. CODE CRIM. PROC. art. 37.07 § 3(g); TEX. R. EVID. 404(b); *Jaubert*, 74 S.W.3d at 3; *Blackwelder*, 2006 WL 3525383 at *2. Accordingly, the

9

trial court did not err in overruling Appellant's objection. Appellant's first point of error should be overruled.

**C.    Assuming without conceding there was error, any such error was harmless.**

The erroneous admission of extraneous offense evidence is nonconstitutional error. *Martin v. State*, 176 S.W.3d 887, 888 (Tex. App.—Fort Worth 2005, no pet.); *Avila v. State*, 18 S.W.3d 736, 741–42 (Tex. App.—San Antonio 2000, no pet.). Any nonconstitutional error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. TEX. R. APP. P. 44.2(b). A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005); *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005). Thus, a criminal conviction should not be overturned for nonconstitutional error if the reviewing court, after examining the record as a whole, has fair assurance that the error did not influence the jury or had but a slight effect. *Herring v. State*, 147 S.W.3d 390, 396 (Tex. Crim. App. 2004).

Assuming without conceding the trial court erred in overruling Appellant's objection, any such error was harmless because it could not have reasonably had any effect on the jury's decision. *Id.*; *Magee v. State*, 994 S.W.2d 878, 888 (Tex. App.—Waco 1999, pet. ref'd). In addition to facts substantiating appellant's guilt

of committing the manslaughter of Eylar, the State presented voluminous evidence relevant to Appellant's violent tendencies. That evidence included, but was not limited to evidence showing that: (1) Appellant killed a fourteen-year-old girl when he was a juvenile and subsequently hid her body; (2) Appellant was a member of a violent white-supremacist gang; and (3) Appellant had anger problems and that he had committed other acts of violence against women, including aggravated assault with a deadly weapon against his ex-girlfriend. RR 4: 46-74, 80-133; RR 5: 237-238.

In light of all the punishment evidence introduced by the State, the brief mention of the extraneous acts Appellant claims should not have been admitted—killing a pet and attempting to set a girl's hair on fire—would not have had any effect on the jury's decision. *Herring*, 147 S.W.3d at 396. At best, it had but slight effect. *Id.* Accordingly, assuming without conceding there was error, any such error was harmless. *Id.* Appellant's first point of error should be overruled.

## STATE'S REPLY TO APPELLANT'S SECOND POINT OF ERROR

Appellant's Contention

The trial court abused its discretion in failing to grant Appellant's motion for new trial based on alleged impermissible communications between jurors and persons interested in the outcome of the trial.

State's Reply

The trial court did not err in overruling Appellant's motion for new trial because conflicting evidence was presented during the hearing on Appellant's motion.

Argument and Authorities

**I.     The trial court did not err in overruling Appellant's motion for new trial because conflicting evidence was presented during the hearing on Appellant's motion.**

Appellant argues that the trial court erred in overruling Appellant's motion for new trial because the jury had improper communications with persons interested in the outcome of the trial at some point during the trial. *See* Appellant's Brief at 14. Appellant argues that the jury members may have overheard improper hearsay and may have been improperly influenced, and that they may have already formed opinions as to Appellant's proper punishment. *Id.* at 15. Appellant

contends that, in overruling his motion for new trial, the trial court limited his right to receive a fair trial. *Id.* at 15-16.

## A.    Standard of Review and Applicable Law

A trial court's denial of a defendant's motion for new trial is reviewed under an abuse of discretion standard. *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). A reviewing court does not substitute its own judgment for that of the trial court; rather, it determines whether the trial court's analysis was arbitrary or unreasonable. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). The trial court is the trier of fact and the sole judge of the credibility of the witnesses at a hearing on a motion for new trial. *Id.* Where there is conflicting evidence on an issue of fact as to jury misconduct, the trial judge determines the issue, and there is no abuse of discretion in overruling the motion for new trial. *Id.* (quoting *Thomas v. State*, 699 S.W.2d 845, 854 (Tex. Crim. App. 1985)).

Article 36.22 of the Texas Code of Criminal Procedure provides that: "[n]o person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." TEX. CODE CRIM. PROC. art. 36.22. When a juror converses with an unauthorized person about the case, injury to the accused is presumed, and a new trial may be warranted. *Quinn v. State*, 958 S.W.2d 395, 401 (Tex. Crim. App. 1997). However, the appellant has the burden

of proving the allegation of juror misconduct. *Patrick v. State*, 906 S.W.2d 481, 498 (Tex. Crim. App. 1995), *cert. denied*, 517 U.S. 1106 (1996).

**B.      Conflicting evidence was presented during the hearing on Appellant's motion; therefore, the trial court did not err.**

At the hearing on Appellant's motion for new trial, Amber Floyd, one of Appellant's friends, testified that she observed jury members in Appellant's case commingling with members of Brittany Eylar's family before the trial began. RR 7: 6, 13. Floyd testified that she saw members of the jury and Eylar's family members sitting in close proximity to one another outside the courtroom. RR 7: 15. She also testified that she saw a group of jurors and Eylar's family members walking laps around the hallway prior to the commencement of voir dire. RR 7: 15-16. Floyd testified that she observed the jurors speaking with Eylar's family members, but that she could not hear their conversations because Floyd was situated at the other end of the hallway at the time of the alleged conversations. RR 7: 30.

Stephen Opry, Appellant's brother, also testified at the hearing. RR 7: 44. He testified that before the trial began, he also observed jury members and members of Eylar's family sitting closely together outside the courtroom and speaking to one another. RR 7: 45-46. Opry testified that he could not hear what the conversation was about. RR 7: 47. He further testified that Deputy Estrada, one

of the court's bailiffs, eventually came out to the area where the jurors and family members were sitting and escorted the jury back through the secured area of the courtroom. RR 7: 49. Opry testified that Estrada later came out of the hallway once again and guided Eylar's family members into the courtroom. RR 7: 50.

Deputy Estrada was the third and final witness at the hearing on Appellant's motion for new trial. RR 7: 65. He testified that he never went outside the courtroom and saw jurors commingling with members of Eylar's family. RR 7: 70. Estrada testified that on the particular date at issue, there were no family members in the hallway at all. RR 7: 71. Estrada testified that he did not bring Eylar's family members into the courtroom; rather, they were escorted by victim assistance. *Id.*

The testimony of Amber Floyd and Stephen Opry clearly conflicts with the testimony of Deputy Estrada. Floyd and Opry testified that they observed jurors and Eylar's family members sitting together in the hallway outside the courtroom and speaking with one another. RR 7: 13-16, 44-47. Deputy Estrada, on the other hand, testified that Eylar's family members were never in the hallway outside the courtroom at all, and that he never observed the jurors commingling with Eylar's family members on the date at issue. RR 7: 70. The trial court was the trier of fact and sole judge of the credibility of the witnesses. *Lewis*, 911 S.W.2d at 7. It resolved the conflicting testimony in favor of the prosecution and this Court should

15

defer to that resolution. Accordingly, the trial court did not abuse its discretion in overruling Appellant's motion. *Id.* Appellant's second point of error should be overruled.[1]

---

[1] Alternatively, the State would argue that even if there was no conflicting testimony as to the alleged jury misconduct, Appellant did not meet his burden to show that jury misconduct occurred. *Patrick*, 906 S.W.2d at 498. Neither witness for Appellant could testify as to the content of the alleged conversations between the jurors and members of Eylar's family. RR 7: 30, 47. In the absence of any affirmative evidence showing that the jury members spoke to unauthorized persons about the case, it cannot be said that the trial court abused its discretion in overruling Appellant's motion for new trial. *Id.* (no abuse of discretion in overruling Appellant's motion for new trial when Appellant presented no affirmative evidence of jury misconduct).

## CONCLUSION AND PRAYER

Appellant suffered no reversible error.  Therefore, the State prays that this Court will affirm the judgment of the trial court.

Respectfully submitted,

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR
Chief, Post-Conviction
Tarrant County Criminal District Attorney's
Office—Post-Conviction

/s/ Landon A. Wade
LANDON A. WADE
Assistant Criminal District Attorney
Tim Curry Criminal Justice Center
401 W. Belknap
Fort Worth, Texas  76196-0201
(817) 884-1687
FAX (817) 884-1672
State Bar No.  24098560
COAAppellateAlerts@tarrantcounty.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document contains 3,018 words per The Texas Rules of Appellate Procedure 9.4(e).

 /s/ Landon A. Wade
LANDON A. WADE

17

# CERTIFICATE OF SERVICE

A true copy of the State's brief has been e-served to opposing counsel, the Hon. Barry Alford, 1319 Ballinger Street, Fort Worth, Texas, 76102, on this, the 14th day of November, 2016.

　　　　　　　　　　　　　　 /s/ Landon A. Wade
　　　　　　　　　　　　　　LANDON A. WADE


H:\WADE.W42\BRIEFS\Opry, Jim Harvey.BR.docx