

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00267-CR

SARAH JEAN CLEMENT                                                         APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

FROM COUNTY CRIMINAL COURT NO. 7 OF TARRANT COUNTY
TRIAL COURT NO. 1255151

----------

## OPINION

----------

## I. INTRODUCTION

Appellant Sarah Jean Clement appeals her conviction for driving while intoxicated. A jury found her guilty of the offense, and the trial court sentenced her to ninety days' confinement and assessed a $750 fine, suspended imposition of the sentence, and placed Clement on community supervision for eighteen months. In four issues, Clement argues that the trial court erred by compelling

her to submit to a field-sobriety test in front of the jury, by overruling her objection to the prosecutor's "scientific statements" that were made in front of the jury, by overruling her objection to the arresting officer's testimony about his physical ailments, and by denying her motion for new trial. For the reasons set forth below, we will affirm the trial court's judgment.

## II. FACTUAL BACKGROUND

At approximately 1:30 a.m. on September 23, 2011, a motorist named Michael Cohen was traveling westbound on I-20 in Fort Worth when he observed a pickup truck driving erratically. Cohen was a member of "Code Blue," a volunteer citizen's organization that reports crime to the police. After following the pickup for a distance and determining that the erratic driving was not an isolated instance, Cohen called 9-1-1. A recording of this call was admitted into evidence and played for the jury. Cohen testified that he followed behind the pickup, reported its location, and recited that the pickup was slowing down to twenty miles per hour and then speeding up to travel fifty miles per hour; had hit the highway embankment or guardrail, causing sparks to fly; and after exiting the highway, was pulling U-turns on the roadway. After police officers had stopped the pickup, Cohen was directed by dispatch to stop at the scene; he did so, and he provided officers with his contact information.

Fort Worth Police Officer Dale McCoy testified that on September 23, 2011, at approximately 1:30 a.m., he was on patrol when the dispatcher reported a possible DWI near Officer McCoy's location. When Officer McCoy arrived at

2

the scene, another Fort Worth police officer had already pulled over the suspected drunk driver for a defective tail lamp. When Officer McCoy approached the pickup, Clement was inside. Cohen was at the scene as well, and the other officer was speaking to Cohen. When Officer McCoy asked Clement to exit the vehicle, her pants were unzipped. Officer McCoy smelled an odor of alcohol on Clement's breath. Officer McCoy had Clement perform field-sobriety tests, and the results were that she exhibited six clues on the HGN test, three clues on the walk-and-turn test, and zero clues on the one-leg-stand test. Officer McCoy testified that under the totality of the circumstances he observed at the scene, he determined that Clement was intoxicated.

A VHS tape recording of Officer McCoy's roadside administration of the field-sobriety tests on Clement, of Clement's transport to jail, and of Officer Martinez's administration of field-sobriety tests on Clement in the Intoxilyzer room at the jail, was admitted into evidence and played for the jury. On the tape, when Officer McCoy asks Clement whether she has been drinking, she says that she drank two beers. On the tape of the events in the Intoxilyzer room, Clement agrees to submit a breath specimen, but ultimately no breath specimen was obtained.

At trial, Officer McCoy testified that he had mistakenly checked the box on his report that indicated Clement had resting nystagmus; persons with resting nystagmus are not candidates for the HGN test. He agreed that he did not ask Clement the required predicate questions prior to performing the HGN test on

3

her. He also testified that despite Cohen's report during his 9-1-1 call that the pickup had hit an embankment or a guardrail, there was no damage to Clement's vehicle and agreed that this was "bizarre." He also agreed that Officer Martinez, the officer in the Intoxilyzer room with Clement, was not certified to administer field-sobriety tests although he had administered them to Clement. And Officer McCoy agreed that he did not tell Clement that she had the right to a blood test.

Following a particular segment of cross-examination of Officer McCoy, the State asked for permission to "have the witness [Officer McCoy] step down and check for resting nystagmus on this defendant." Defense counsel objected, stating that "if she [Clement] had resting nystagmus in 2011 [at the time of her arrest], that doesn't necessarily mean she has it now. That's over three years ago." The prosecutor responded, "If she had resting nystagmus three years ago, she absolutely would have it today. It's not something that just goes away. It's something that you have or you do not." Defense counsel then asserted a Fifth-Amendment objection and objected that neither counsel for the prosecution nor Officer McCoy were "qualified to talk about when someone has resting nystagmus, when it goes away, what causes it, how long it lasts." The trial court overruled Clement's objections, Officer McCoy performed an in-court HGN test on Clement, and he commented that "[r]ight now she would have resting nystagmus.[1] I don't see any resting nystagmus."

_____

    [1]This comment by Officer McCoy, taken in context, constitutes opinion testimony that if Clement had resting nystagmus in 2011, "[r]ight now she would

4

Officer Martinez testified that Clement had a strong odor of alcohol on her and exhibited four of eight clues on the walk-and-turn test and three of four clues on the one-leg-stand test that he administered to her at the jail in the Intoxilyzer room.[2]  Officer Martinez said that the "decision point" for intoxication on both tests was exhibiting two clues.  Officer Martinez testified that although Clement blew into the Intoxilyzer twice, no breath sample was obtained from her because of her failure to blow with sufficient pressure.  Officer Martinez testified that he had no doubt that Clement was intoxicated on the night in question.

### III.  ISSUE 1:  THE IN-COURT NYSTAGMUS TEST

In her first issue, Clement argues that the trial court erred by compelling her to submit to an in-court nystagmus test in violation of her rights under the Fifth Amendment to the United States Constitution and article 1, section 10 of the Texas constitution and that the trial court's error was compounded by Officer McCoy's comment about her performance on the test.  "The privilege against self-incrimination as contained in both the Fifth Amendment to the United States Constitution and Article I, § 10 of the Texas [c]onstitution protects only testimonial communications."  *Adams v. State*, 969 S.W.2d 106, 113 (Tex.

have resting nystagmus"; this is the comment by Officer McCoy that Clement complains of in her second issue.  Clement characterizes Officer McCoy's "[r]ight now she would have resting nystagmus" testimony as a "comment," presumably because it was not made in response to a question by the State.

[2]Officer Martinez testified that he did not perform the HGN test on Clement because it was standard procedure not to perform the HGN test at the jail and because he was not qualified to perform it.

5

App.—Dallas 1998, no pet.); *see also Williams v. State*, 116 S.W.3d 788, 791 (Tex. Crim. App. 2003) (explaining that Fifth Amendment applies only to "testimonial communications that are incriminating"). Consequently, requiring a defendant in a criminal case to provide a voice exemplar "does not, without more, compel him to provide a testimonial response." *Williams*, 116 S.W.3d at 792. Requiring a DWI defendant to recite the alphabet or count backwards does not violate the Fifth Amendment. *See Gassaway v. State*, 957 S.W.2d 48, 51 (Tex. Crim. App. 1997). Likewise, a video recording of a DWI suspect performing sobriety tests is not testimonial evidence under the Fifth Amendment. *Miffleton v. State*, 777 S.W.2d 76, 80 (Tex. Crim. App. 1989). And HGN test results constitute nontestimonial evidence. *See Campbell v. State*, 325 S.W.3d 223, 233 (Tex. App.—Fort Worth 2010, no pet.). Accordingly, because Officer McCoy's in-court nystagmus testing of Clement did not elicit testimonial communications, the testing did not implicate Clement's rights under the Fifth Amendment to the United States Constitution or article 1, section 10 of the Texas constitution. *See Gassaway*, 957 S.W.2d at 51; *Miffleton*, 777 S.W.2d at 80. And because Clement's performance during the nystagmus testing was not testimonial in nature, neither was Officer McCoy's comment regarding her performance. *See Youens v. State*, 988 S.W.2d 404, 407 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (holding that because appellant's performance during sobriety tests was not testimonial in nature, trial court did not abuse its discretion by admitting trooper's testimony concerning manner in which appellant

6

performed sobriety tests); *see also Campbell*, 325 S.W.3d at 233. We overrule Clement's first issue.

## IV. ISSUE 2: THE PROSECUTOR'S STATEMENT AND THE OFFICER'S COMMENT

In her second issue, Clement complains that the trial court "erred in overruling defense counsel's objection to the relevance of improperly admitted scientific testimony[,]" specifically, by overruling her objections to the prosecutor's statement in front of the jury that "if she [Clement] had resting nystagmus three years ago, she absolutely would have it today. It's not something that just goes away" and to Officer McCoy's comment that if Clement had resting nystagmus in 2011, then "[r]ight now she would have resting nystagmus." Because we are not prepared to hold that the trial court did not err, we address whether such error is harmless.[3] *See* Tex. R. App. P. 44.2(b). Under rule 44.2(b), we review nonconstitutional error to determine whether the error affected the substantial

---

[3]An error analysis is not required when a harm analysis is dispositive. *See State v. Ambrose*, No. PD-0143-15, 2016 WL 1696455, at *1 (Tex. Crim. App. Apr. 27, 2016) (affirming court of appeals's decision that assumed without deciding that jury instructions were erroneous and that then performed harm analysis); *Herring v. State*, 147 S.W.3d 390, 394 (Tex. Crim. App. 2004) (affirming court of appeals's decision that assumed arguendo that trial court erred by refusing to exclude evidence of exact description of appellant's prior crime during guilt-innocence and that then performed harm analysis); *see also Wooten v. State*, 400 S.W.3d 601, 607 (Tex. Crim. App. 2013) ("Finding our harm analysis thus dispositive, we need not address whether the trial court did, in fact, err not to include the instruction."). And, contrary to the dissent's assertion, Clement did not challenge the reliability of the scientific theory underlying resting nystagmus testing in the trial court. *See, e.g., Shaw v. State*, 329 S.W.3d 645, 655 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (recognizing qualification, reliability, and relevance are separate requirements of expert testimony and objection as to one requirement does not preserve error as to another).

rights of Clement. *See* Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). In making this determination, we review the record as a whole, including any testimony or physical evidence, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with the other evidence, the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire if applicable. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

Examining the record as a whole, it reflects that at the close of trial, the trial court admonished the jury orally (when it read the court's charge to the jury) and in writing (in the court's charge) to not refer to or discuss anything they had heard about Clement or the case "other than from what you have heard from the witness stand during the trial." These instructions reduced the likelihood that any error stemming from the prosecutor's comment influenced the jury. *See, e.g.*, *Casanova v. State*, 383 S.W.3d 530, 543 (Tex. Crim. App. 2012) (recognizing presumption on appeal that jurors follow trial court's instructions). And Officer

8

McCoy's "[r]ight now she would have resting nystagmus" comment, taken in context, was fairly cryptic; the State did not ask for elaboration or further mention the in-court nystagmus test during trial. The State did not mention HGN or resting nystagmus during closing argument, and defense counsel mentioned it only briefly—pointing out that three years after Officer McCoy stated in his report that Clement had resting nystagmus, he claimed at trial that "it was a mistake." Defense counsel also mentioned in closing that Officer McCoy had conceded that he had not asked Clement the proper predicate questions before performing the HGN test on her, including whether Clement wore contacts or had head trauma. Thus, defense counsel successfully undermined the reliability of the results of the HGN test performed on Clement on the night of her arrest— regardless of whether the results were also invalid because Clement had resting nystagmus. Because admitted evidence undermined the results of the HGN test performed on Clement on the night of her arrest, the error alleged by Clement concerning the resting nystagmus comments was unlikely to have significantly influenced the jury. *See Robison v. State*, 461 S.W.3d 194, 201–02 (Tex. App.— Houston [14th Dist.] 2015, pet. ref'd) (assuming error in exclusion of evidence and holding it harmless because other evidence that was admitted served the same purpose).

Looking to Clement's defensive theories, she asserted that she was not intoxicated. She pointed out that she was pulled over because her tail lamp was not working, and she emphasized her perfect performance of the one-leg-stand

9

test and her good performance on the walk-and-turn test as reflected in the State's video of the road-side field-sobriety tests. In light of Clement's other stronger defensive theories—i.e., that she was not intoxicated—the alleged error impacting Clement's defensive theory that she had resting nystagmus on the evening of her arrest likely had but a slight effect on the jury. *Accord Villarreal v. State*, 453 S.W.3d 429, 440–41 (Tex. Crim. App. 2015) (holding, in charge-error harm analysis, that erroneous omission of defensive instruction was not egregious when instruction went to only alternative defense raised by defendant).

And considering the character of the alleged error and the nature of the evidence supporting the verdict, we note that eyewitness testimony from Cohen supports the jury's verdict. The audio recording of Cohen's 9-1-1 call was played for the jury, and Cohen testified in person at trial, providing the jury with the opportunity to gauge his credibility. *See Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012) (recognizing that jury, as factfinder, is sole judge of witnesses' credibility and weight to be given to witnesses' testimony); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (recognizing appellate court must defer to jury's resolution of conflicts in testimony, weight of evidence, and inferences drawn from evidence).[4] Given the eyewitness testimony, which, if believed by the jury, established Clement's erratic driving for an extended period

---

[4]The dissent includes a helpful chart summarizing the conflicting evidence but fails to defer to the jury's resolution of the charted conflicts and fails to conduct a harm analysis using the *Motilla* factors. *See* 78 S.W.3d at 355.

10

of time—including failing to maintain her lane, slowing down and speeding up, hitting an embankment or guardrail, and making multiple U-turns at 1:30 a.m.— and Clement's own videotaped statement that she had consumed two beers, the character of the alleged error juxtaposed with the evidence of guilt that the jury could have believed provides us with assurance that the alleged error did not influence the jury or had but a slight effect. *See Motilla*, 78 S.W.3d at 355 (explaining strong evidence of guilt may provide assurance that error had but slight effect). Because, after reviewing the entire record, we have fair assurance that the alleged error did not influence the jury or had but a slight effect, we overrule Clement's second issue. *See* Tex. R. App. P. 44.2(b); *Solomon*, 49 S.W.3d at 365.

## V.  ISSUE 3:  OFFICER MCCOY'S PHYSICAL AILMENTS TESTIMONY

In her third issue, Clement asserts that the trial court abused its discretion by permitting Officer McCoy to testify about his own physical ailments over her relevancy objection. On cross-examination, defense counsel elicited testimony from Officer McCoy that performance on the field-sobriety tests could be impacted by a performer's physical ailments and established that Officer McCoy had not asked Clement whether she suffered from any physical limitations. On redirect of Officer McCoy, the State pointed out that Officer McCoy had physically demonstrated for Clement how she was to perform the field-sobriety tests and then questioned Officer McCoy about his own physical ailments. Officer McCoy testified that he had lupus, a herniated disc, and sciatica.

11

Evidence that is otherwise inadmissible may become admissible when a party opens the door to such evidence. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009), *cert. denied*, 560 U.S. 966 (2010). A party opens the door by leaving a false impression with the jury that invites the other side to respond. *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009); *Daggett v. State*, 187 S.W.3d 444, 452 (Tex. Crim. App. 2005).

Defense counsel's questioning of Officer McCoy left the jury with the impression that, due to the degree of physical agility and coordination required to perform the field-sobriety tests, anyone with a physical ailment or injury would not be able to properly perform the tests. Because of this false impression created concerning the physicality required to properly perform the field-sobriety tests, we hold that the trial court did not abuse its discretion by overruling Clement's relevancy objection to Officer McCoy's testimony about his own physical limitations. The State cleared up the false impression by eliciting Officer McCoy's testimony regarding his physical ailments, which did not hinder his performance of abbreviated versions of the field-sobriety tests and his performance was captured on video at the scene. *See Williams*, 301 S.W.3d at 687 (assuming evidence of extraneous murders was inadmissible under rule 404(b), and holding no abuse of discretion because appellant opened the door by deliberately choosing to question prosecutor about them); *Jordy v. State*, 413 S.W.3d 227, 231–32 (Tex. App.—Fort Worth 2013, no pet.) (holding trial court did not abuse its discretion by allowing State to clear up false impression

12

regarding the correlation between the HGN and alcohol concentration). We overrule Clement's third issue.

## VI. ISSUE 4: DENIAL OF MOTION FOR NEW TRIAL

In her fourth issue, Clement argues that the trial court abused its discretion by denying her motion for new trial following a hearing because her right to a fair trial was substantially affected by the admission of the in-court nystagmus test and by Officer McCoy's comment regarding her performance on that test. We analyzed these arguments above and held that neither the in-court nystagmus test nor the results of that test were testimonial in nature, that they did not implicate Clement's privilege against self-incrimination, and that the trial court did not abuse its discretion by permitting the in-court test over Clement's Fifth Amendment objection. Concerning Officer McCoy's comment that Clement would have resting nystagmus "[r]ight now" if she had it in 2011, we held that any error stemming from the comment was harmless. Thus, Clement's right to a fair trial was not substantially affected by the admission of the nontestimonial in-court resting nystagmus test, by comments concerning Clement's performance on that test, or by Officer McCoy's comment concerning resting nystagmus. *See Gassaway*, 957 S.W.2d at 51. Accordingly, we hold that the trial court did not abuse its discretion by denying Clement's motion for new trial. *See* Tex. R. App. P. 21.3 (setting forth nonexhaustive list of grounds that require granting a new trial); *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014) (stating that abuse-of-discretion standard is used for denial of a motion for new trial); *Wyatt v.*

13

*State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000) (rejecting appellant's argument that cumulative effect of errors at trial denied him right to a fair trial when the court had previously rejected each of appellant's individual arguments); *see also Wright v. State*, 178 S.W.3d 905, 929 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (holding that trial court did not abuse its discretion by denying hearing on motion for hearing and new trial regarding whether in-court demonstration was based on speculation).  We overrule Clement's fourth issue.

## VII. CONCLUSION

Having overruled each of Clement's four issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  DAUPHINOT, WALKER, and GABRIEL, JJ.

DAUPHINOT, J., filed a dissenting opinion.

PUBLISH

DELIVERED:  July 14, 2016

14