

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00307-CR

———————————————————

PATRICK ANDREW WRIGHT, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court No. 1724999

---

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Patrick Andrew Wright appeals his conviction for felony assault of a family member. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(A). In three issues, he contends that the trial court abused its discretion by improperly admitting extraneous-offense evidence, by allowing the State to strike at him over his counsel's shoulders during closing argument, and by refusing to grant a mistrial based on the State's allegedly improper closing argument. In a fourth issue, Wright contends that these cumulative errors warrant reversal. We affirm.

## Background

In 2013, Wright and the complainant began a tumultuous nine-year relationship. For much of that time, they were homeless and lived in hospitals, shelters, motels, parks, or a car. They also used heroin and alcohol. Wright "got physical" with the complainant in the first thirty days of their relationship, and he continued to do so regularly. According to the complainant, Wright would strike her with his hands and attempt to strangle her.

Both Wright and the complainant would accuse each other of infidelity. On at least two specific occasions, these accusations ended in arguments during which Wright choked the complainant.

One night in March 2022, the complainant was on the phone with her daughter "as [she and Wright] were getting into it." Wright did not hit the complainant that night, but he chased her across the street while she was screaming. The complainant's

2

daughter called the police, but when officers arrived, the complainant told them that nothing had happened.

The complainant testified that the same officers responded to another incident on April 5, 2022. According to the complainant, Wright had attacked her during an argument. He slapped her with his hands, and when she pushed him back into a cabinet, breaking it, he hit and cut her with the broken pieces. The complainant called the police and talked to them while she was being treated by paramedics. Wright was then arrested for, charged with, and convicted by a jury of assault of a family member.

## Extraneous Offense

In his first issue, Wright complains about the trial court's admission of evidence that after the complainant called the police regarding the March 2022 incident, they arrested Wright for outstanding Class C misdemeanor warrants. Although the trial court had initially granted a motion in limine regarding the evidence, the trial court agreed with the State that Wright had opened the door to its admission during his cross-examination of the complainant by creating a false impression that he had not been arrested and by intimating that the complainant had fabricated the April 5 allegations to get him out of her apartment.

### Standard of review and applicable law

We review a trial court's decision to admit evidence for a clear abuse of discretion. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). An abuse of discretion occurs only

when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Zuliani*, 97 S.W.3d at 595. If the trial court's evidentiary ruling is correct on any applicable theory of law, we will not disturb it even if the trial court gave the wrong reason for its correct ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Qualls v. State*, 547 S.W.3d 663, 675 (Tex. App.—Fort Worth 2018, pet. ref'd).

Rule of Evidence 404(b)(1) precludes the admission of evidence of a crime, wrong, or act solely to prove a person's character to show that he acted in conformity with that character on a particular occasion. Tex. R. Evid. 404(b)(1). However, a party may open the door to the admission of otherwise inadmissible extraneous-offense evidence by examining a witness in a way that creates a false impression that the admission of the extraneous-offense evidence would correct. *Houston v. State*, 208 S.W.3d 585, 591 (Tex. App.—Austin 2006, no pet.).

**Applicable facts and analysis**

On cross-examination of the complainant, defense counsel elicited testimony that when responding to the April 5 incident, one of the police officers asked her, "Why did you let him back?" The complainant explained that Wright "wouldn't leave. . . . [H]e had his own apartment at the time. I kept telling him to go home. He would not go home." She admitted that she wanted a break and that she "wanted it to be over." When asked, "And in March of 2022, no -- no arrest for family violence

against you, correct," the complainant answered, "Because, again, he did not hit me that night." Defense counsel then asked,

Q. And then, April 5th, 2022, less than, what, a week and a half, two weeks later, --

A. Right.

Q. -- *you say something different.* He assaults me, and [Wright] gets arrested?

A. He assaults me - - I'm sorry. Yeah, he assaulted me.

Q. March of 2022?

A. No. Again, no, that was April 5th, sir. March, he did not assault me. We were running. He was chasing me across the street, and my daughter is on the other line with me. We're talking. And I'm screaming because he's chasing me across the street. So she called the police. He did not hit me. [Emphasis added.]

Before beginning redirect, the State sought to ask the complainant, "Was [Wright] arrested on March 22nd of 2022?" The prosecutor characterized the above questioning as, "You say . . . he wasn't arrested on March 22nd, 2022, and then, just two weeks later, you say something different and he's arrested, and you wanted him to leave." According to the State, that cross-examination

left an impression with the jury that [the complainant] did not get her way two weeks prior, she fine tunes her story two weeks later to get him actually arrested when that wasn't the case. He was arrested, returned to the location, as she has testified, because he will not leave, and then assaulted her.

After the trial court reviewed the reporter's record and indicated that it agreed with the State, the prosecutor stated that, instead of eliciting the arrest testimony from

5

the complainant, he intended to recall one of the officers who responded to the March and April 2022 incidents. The trial court heard argument from both parties but ultimately agreed with the State's characterization of the cross-examination, in light of the "whole line of questioning": "your point is she had to say that to get him arrested."

The trial court allowed the State to recall Officer Dustin Martin and ask him the following:

Q. Now, whenever you testified previously, did I tell you not to go into a certain matter?

A. Yes, sir.

Q. Okay. And at this point, when I called you today, did I tell you that we're going to take up that matter now?

A. Yes.

Q. Now, on March 22nd of 2022, when you testified to this jury yesterday about that callout with [the complainant] and [Wright] -- do you remember that?

A. Yes.

. . . .

Q. Now, yesterday, when we discussed, we left off with no offense had occurred that night, right?

A. That's right.

Q. Okay. And then you were also the same officer on a callout a couple weeks later?

A. Yes, I am.

6

Q. And -- okay. And so that night, in April of 2022, there was an offense that occurred that night y'all determined?

A. Yes.

Q. Okay. I'm talking about the second time you talked to them.

A. Yes.

Q. [Wright] was arrested for family violence that night?

A. Yes.

Q. Okay. But did y'all just cut him loose on March 22nd, a few weeks prior?

A. No.

Q. Okay. Was he taken into custody?

A. Yes, he was.

Q. And can you just briefly explain what a, like, local or regional warrant is?

A. A local or regional warrant is just a Class C warrant. It can be a traffic offense or just a lower offense.

Q. Okay. Like, a traffic ticket?

A. Yeah.

Q. And that can be, like, unpaid fines or something, right?

A. Yes.

Q. Now -- and every person that you come into contact with, do you kind of run and check to see if anybody has those warrants?

A. Yes.

Q. Okay. And did you do that in this case on March 22nd of 2022?

A. I did.

. . . .

Q. And were those warrants confirmed?

A. They were.

Q. And, again, just traffic ticket, Class C stuff, right?

A. Right.

Q. Was [Wright] arrested at that time?

A. He was.

Q. And then where was he taken?

A. He was taken to Fort Worth jail.

Q. Okay. So just to be clear, was [Wright] left on scene with [the complainant] and just -- they were cut loose to go about their merry way that night?

A. No.

Q. Okay. Were they -- were they separated?

A. Yes.

Q. And then, just three weeks later, were they back together?

A. Yes.

We conclude that the trial court did not abuse its discretion by admitting the complained-of evidence. Wright's cross-examination could have been construed as leaving the false impression that the complainant fabricated what she told the responding officers on April 5 so that they would arrest Wright—because they had not arrested him after she told them in March 2022 that he had merely scared her. *See,*

8

*e.g.*, *Adetula v. State*, No. 12-24-00119-CR, 2025 WL 1587209, at *7 (Tex. App.—Tyler June 4, 2025, no pet. h.) (mem. op., not designated for publication) (holding that trial court did not abuse its discretion by admitting evidence that the appellant had made admissions during a custodial interview to correct false impression that officer had conducted a shoddy investigation by failing to interview additional witnesses); *Jenkins v. State*, No. 05-22-01003-CR, 2024 WL 412518, at *5 (Tex. App.—Dallas Feb. 5, 2024, pet. ref'd) (mem. op., not designated for publication) (holding that trial court did not abuse its discretion by overruling the appellant's *Crawford* objection when the appellant had elicited testimony regarding presence of an eyewitness at the crime scene); *Clement v. State*, 499 S.W.3d 153, 159 (Tex. App.—Fort Worth 2016, pet. ref'd) (holding that trial court did not abuse its discretion by allowing State to elicit testimony from officer regarding his own physical ailments to correct false impression that "due to the degree of physical agility and coordination required to perform the field-sobriety tests, anyone with a physical ailment or injury would not be able to properly perform the tests"); *Mick v. State*, 256 S.W.3d 828, 831–32 (Tex. App.—Texarkana 2008, no pet.) (holding that trial court did not abuse its discretion by allowing State to introduce rest of child forensic interview into evidence when cross-examination could have left jury with false impression that child had initially said no abuse occurred and changed her testimony "after the fact" following a "further interview").

We overrule Wright's first issue.

9

## Closing Argument

In his second issue, Wright contends that the trial court erred by overruling his objection to the State's closing-argument reference to the false impression left by the defense.

During his closing argument, defense counsel argued that the complainant had fabricated her testimony about the events on April 5, 2022: "On March 22nd, 2022, for all we know, she knew he had warrants, ticket warrants. . . . But he was not arrested for a family violence charge that night, and she knew that. And within a week and a half later, he's back at the house." The prosecutor responded with the following:

> Do you think that woman went through nine years of hell, including heroin and living on the streets, and thought, "Hmm. Let me set this up. Let me slow play it. I know he's got warrants because all that's new."
>
> If she knew he had warrants, why didn't they say, "You knew he had warrants. You got him arrested the first night."
>
> No, *it's when he left the false impression with you guys* that now he wants to say, "Of course she knew that. Sure she knew that, right? She's setting him up."
>
> [Defense counsel]: Judge, I'm going to object. That's improper argument. Striking over Defense's shoulder.
>
> [Prosecutor]: That is a reasonable deduction from the evidence and a response to Defense counsel's argument, which are proper areas in closing argument.
>
> THE COURT: I'm going to overrule. And just move on. [Emphasis added.]

**Applicable law**

To be permissible, the State's jury argument generally must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to opposing counsel's argument; or (4) plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011).

Although generally a remark that strikes at the defendant through his counsel is improper, a remark directed at defense counsel's argument—based on a reasonable inference from the record and made in good faith—is not. *Coble v. State*, 871 S.W.2d 192, 205 (Tex. Crim. App. 1993)[1] (citing *Gorman v. State*, 480 S.W.2d 188, 190–91 (Tex. Crim. App. 1972), in which the Court held that the comment, "Don't let him smoke-screen you, he has smoke-screened you enough," was a permissible response to defense counsel's argument); *Beasley v. State*, 864 S.W.2d 808, 812 (Tex. App.—Fort Worth 1993) (relying on *Gorman* to hold similar argument not improper), *aff'd*, 902 S.W.2d 452 (Tex. Crim. App. 1995). But the Court of Criminal Appeals has cautioned that "[a]lthough it is impossible to articulate a precise rule regarding these kinds of argument, it is fair to say that a prosecutor runs a risk of improperly striking at a defendant over the shoulder of counsel when the argument is made in terms of defense counsel personally and when the argument explicitly impugns defense

---

[1]In *Coble*, the prosecutor had referred to "the saying among lawyers" that if you don't have the facts or law on your side, you argue "something ridiculous." 871 S.W.2d at 203.

11

counsel's character." *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g).

**Analysis**

Citing Merriam-Webster's Dictionary, Wright argues that by accusing defense counsel of creating a false impression, the prosecutor accused defense counsel of lying. According to Wright, "'[c]reating a false impression' is lawyer-speak for lying." Although it is true that the meaning of the word "false" is untrue, a person can make a false statement unintentionally. *See, e.g.*, *Parks v. State*, Nos. 02-15-00419-CR, 02-15-00420-CR, 2017 WL 444378, at *3 (Tex. App.—Fort Worth Feb. 2, 2017, pet. ref'd) (mem. op., not designated for publication) ("Testimony is false if it is untrue; the falsehood need not be intentional, result from the witness's bad faith, or constitute perjury. Thus, testimony may be false even when its falsity is unintentional." (citations omitted)). And the prosecutor's comment here is ambiguous in that it did not distinguish between an unintentional and intentional false impression in referring to the defense's cross-examination.[2]

However, read in the context of the entire closing arguments, this comment appears to cross the permissible line. In the first part of its closing argument, the State explained why it had recalled Officer Martin to the stand: "We needed to correct th[e] false impression." In response, defense counsel told the jury, "And I didn't want y'all

---

[2]Our holding—and the trial court's ruling—should not be read to cast doubt on the propriety or efficacy of counsel's defensive strategy.

to know that he was arrested for traffic tickets. It is what it is." Thus, defense counsel admitted that he had intentionally tried to exclude the evidence. In the context of these two prior excerpts of the closing arguments, the complained-of argument—perhaps because it was inartfully worded in the heat of the moment—appears to accuse defense counsel of intentionally being untruthful with the jury rather than simply responding to the defensive argument.

Nevertheless, even if the trial court may have abused its discretion by overruling Wright's objection to the argument, Wright has not shown harm. Generally, we will not reverse a trial court's erroneously overruling a defense objection to argument unless the error affected the defendant's substantial rights. Tex. R. App. P. 44.2(b); *Freeman*, 340 S.W.3d at 728; *see Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000) (noting that precedent "suggests that most comments that fall outside the areas of permissible argument" will be nonconstitutional). In determining whether substantial rights were affected by improper argument, we consider three factors: (1) the severity of the misconduct (that is, the prejudicial effect of the prosecutor's remarks), (2) curative measures, and (3) the certainty of conviction absent the misconduct. *Freeman*, 340 S.W.3d at 728.

The second factor weighs in Wright's favor because the trial court overruled the objection and therefore took no curative measures. *See Mosley*, 983 S.W.2d at 260; *Coleman v. State*, 577 S.W.3d 623, 640 (Tex. App.—Fort Worth 2019, no pet.). However, the first and third factors weigh in the State's favor.

The State's case depended on the complainant's testimony to prove the offense, with the defense focused on her credibility and law enforcement's competence; there had been ample evidence of the couple's tumultuous history, including other extraneous-offense evidence such as Wright's use of heroin. The jury was entitled to believe the complainant's testimony that Wright hit and choked her. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). Although the trial court did not abuse its discretion by allowing the testimony that the police arrested Wright for traffic tickets on March 22, 2022, that evidence was still of only marginal utility in propping up the complainant's credibility,[3] especially in light of the fact that she had previously testified that Wright regularly hit and tried to strangle her during their nine-year relationship. Thus, the third factor weighs in the State's favor. *See Garcia v. State*, No. 14-21-00502-CR, 2023 WL 3529647, at *5 (Tex. App.—Houston [14th Dist.] May 18, 2023, pet. ref'd) (mem. op., not designated for publication).

Our consideration of the second and third factors sheds light on the first factor—the severity of the misconduct. During its initial closing argument, the State had already made the point—without objection—that it had recalled Officer Martin for the sole purpose of correcting the impression that Wright had not been arrested

---

[3]Even with the admission of this evidence, the jury could have disbelieved the complainant, deciding that she had fabricated the more egregious allegations of assault because Wright's arrest for Class C misdemeanors had not resulted in any significant jail time.

14

after the March 22 incident. The State also made clear in that reference—and in its prior questioning of the complainant—that Wright's arrest was solely for traffic tickets, not for any violent offense. Wright's counsel admitted in his closing argument that he had attempted to keep that evidence from being heard. However, rather than being for the purpose of showing character conformity, the State's purpose was to rebut a defensive theory that sought to attack the complainant's credibility. Thus, in the context of the entire record and the closing arguments in particular, the comment was not so severe as to be harmful. *See, e.g.*, *Castillo Alvarado v. State*, No. 05-19-00115-CR, 2020 WL 1181487, at \*2 (Tex. App.—Dallas Mar. 12, 2020, no pet.) (mem. op., not designated for publication) (holding that State's argument that jury should "[b]eware of false prophets, which come to you in sheep's clothing, but inwardly they are ravening wolves," although improper, was not severe in light of the argument as a whole); *Millican v. State*, No. 09-08-103 CR, 2008 WL 5263383, at \*2, \*4–5 (Tex. App.—Beaumont Dec. 17, 2008, no pet.) (mem. op., not designated for publication) (holding that improper closing argument was not severe when the State did not accuse defense counsel of lying or manufacturing evidence but rather intentionally attempting to keep out evidence unfavorable to the defendant); *see also Mosley*, 983 S.W.2d at 260 (noting that severity of misconduct was small when "the comments indicate[d] that the defense may [have been] attempting to distort the jury's view of the evidence through clever argument").

Accordingly, we overrule Wright's second issue.

## Motion for Mistrial

In his third issue, Wright contends that the trial court erred by denying his motion for a mistrial after the prosecutor made additional allegedly improper arguments that a not-guilty verdict would hamstring the State's ability to obtain future family-member assault convictions in Tarrant County:

> What are we doing here? I tell you what, y'all know what unit I work in, right? The Intimate Partner Violence Unit. Tell me. Tell me. Make this easier for me for future victims so I can tell - -
>
> [Defense counsel]: Judge, I'm going to object. That's an improper argument.
>
> [Prosecutor]: This is a plea for law enforcement, Your Honor.
>
> THE COURT: Well, make it for me. It's - - I'm going to sustain to that language. You can rephrase.
>
> [Prosecutor]: Send a message to Tarrant County, in your community, family violence, that if you get Officer Rocha and other Fort Worth officers that forget to take pictures of a broken, particle board, Walmart dresser at that offense, that's not good enough. If you're not bleeding and you don't have an eye bulging out of your face, that's not good enough. We're not going to take it seriously.
>
> All they have to do is stand up and stipulate and say, "This is a misdemeanor." Felony, felony, felony. Be scared of the punishment phase. Send that kind of message if you want to say that, because I will have much shorter conversations with my victims.

Defense counsel objected, and the trial court stated, "I'm going to sustain that to the last comment." Upon counsel's request, the trial court instructed the jury to disregard "the last statement of [c]ounsel." The trial court denied Wright's motion for a mistrial, however.

16

**Standard of review**

When a trial court sustains an objection and instructs the jury to disregard improper argument but denies a defendant's motion for a mistrial, the issue is whether the trial court abused its discretion by denying the mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004). A mistrial is required only in extreme circumstances: when the improper argument causes incurable prejudice—that is, the argument is "so prejudicial that expenditure of further time and expense would be wasteful and futile." *Id.* at 77 (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). In determining whether a trial court abused its discretion by denying a mistrial, we balance the same three factors we consider in the context of improper jury argument: (1) the severity of the misconduct (prejudicial effect); (2) curative measures; and (3) the certainty of conviction absent the misconduct. *Id.*; *Mosley*, 983 S.W.2d at 259.

**Analysis**

Wright argues that a mistrial was warranted because the prosecutor's first improper statement—that he worked in the Intimate Partner Violence Unit— introduced facts outside the record intended to inflame the jury and because the trial court's curative actions—sustaining Wright's objection and instructing the jury to disregard—did not prevent counsel from making another improper argument in the same vein. Thus, according to Wright, "the prosecutor was deliberately directing the

17

jury away from the evidence in this case and encouraging them to convict [him] to 'make it easier' on [the prosecutor] and on future victims."

The State counters that the prosecutor's arguments were a proper plea for law enforcement and therefore not objectionable. *See Freeman*, 340 S.W.3d at 727. A proper plea for law enforcement may argue the relationship between the jury's verdict and (1) the deterrence of crime in general, (2) the deterrence of specific crimes, (3) the impact it will have on the community at large, or (4) the impact it will have on narrower segments of the community (e.g., law enforcement officers, highway drivers, women, or children). *Carmen v. State*, 358 S.W.3d 285, 300 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Borjan v. State*, 787 S.W.2d 53, 55–56 (Tex. Crim. App. 1990)). "The State may not, however, argue that the community or any particular segment of the community expects or demands either a guilty verdict or a particular punishment." *Borjan*, 787 S.W.2d at 56.

Here, the prosecutor's comments—although sarcastic as Wright points out[4]—were a plea for law enforcement that did not suggest that the community demanded or expected a certain verdict, nor did they invite the jury to step into the

---

[4]Although acknowledging the prosecutor's use of sarcasm, Wright contends that the prosecutor was attempting to evoke the jury's sympathy for him to "make it easier" for him to convict in the future by convicting Wright. Understood in context, however, the prosecutor was arguing that if the jury found Wright not guilty because of the lack of visible injury on the complainant—as Wright had argued—then the jury would be making the prosecutor's job easier in the future because the State would not be able to get convictions on similar assault cases based solely on the victim's testimony.

complainant's shoes. Because the remarks were not improper, the trial court did not abuse its discretion by denying Wright's motion for mistrial. *See Legans v. State*, No. 02-18-00229-CR, 2019 WL 4019680, at \*3 (Tex. App.—Fort Worth Aug. 27, 2019, pet. ref'd) (mem. op., not designated for publication); *Caron v. State*, 162 S.W.3d 614, 618 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

We overrule Wright's third issue.

## No Cumulative Error

Wright argues in his fourth issue that the trial court's errors raised in his first through third issues warrant reversal because they "worked together to undermine the integrity of the trial proceedings and the verdict."

According to the cumulative-error doctrine, multiple errors can, in the aggregate, constitute reversible error, even though no single instance of error would do so. *Schmidt v. State*, 612 S.W.3d 359, 372 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). Here, though, we have found only a single harmless error; thus, there are no errors to cumulate in this case. *See Lawrence v. State*, No. 02-23-00238-CR, 2024 WL 3282193, at \*7 (Tex. App.—Fort Worth July 3, 2024) (mem. op., not designated for publication), *pet. ref'd*, 707 S.W.3d 318 (Tex. Crim. App. 2024); *Cory v. State*, No. 02-23-00026-CR, 2024 WL 2854771, at \*20 (Tex. App.—Fort Worth June 6, 2024, no pet. h.) (mem. op., not designated for publication).

We overrule Wright's fourth issue.

19

**Conclusion**

Having overruled Wright's four issues, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 7, 2025